IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA BAYER | : | Case No. 3:11-CV-02105 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CITIMORTGAGE, INC. | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

August 22, 2014

Before the Court is Plaintiff Patricia Bayer's ("Plaintiff" or "Bayer") Motion to Enforce Judgment Reached at Mediation (ECF No. 19) on April 2, 2013 with Defendant CitiMortgage, Inc. ("Defendant" or "CitiMortgage"). The Parties briefed the matter. The Court held a hearing on the motion on July 17, 2014 at which it evaluated the evidence and credibility of the Parties and their counsel. In accordance with the following, the Plaintiff's Motion to Enforce Judgment is granted.

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following findings of fact and conclusions of law.

1

## I.   FINDINGS OF FACT

Plaintiff Patricia Bayer obtained a $131,000 loan on August 30, 2007 from Castle Point Mortgage, Inc.  In May 2008, the loan was assigned to CitiMortgage, which also serviced the loan.  On November 10, 2011, Bayer filed the Complaint originating the instant lawsuit against CitiMortgage, alleging multiple violations of federal and state law.  Plaintiff's claims were essentially predicated upon her contention that, when she entered into a loan modification agreement with CitiMortgage to settle prior litigation in December 2009, she was relieved of her obligation to pay CitiMortgage escrow for taxes and insurance.

Pursuant to the mediation program maintained by the United States District Court for the Middle District of Pennsylvania, the Parties in this matter attended a voluntary mediation before mediator Walter Grabowski, Esquire on April 2, 2013. Those present at the mediation included: Bayer, her attorney William Schwab, Esquire; CitiMortgage attorney Martin Bryce, Esquire; a CitiMortgage representative; and Mr. Grabowski,.  Attorneys for both Parties had binding settlement authority at the mediation.

At the conclusion of the mediation, the Parties reached a settlement agreement on material terms.  The Parties agreed to memorialize these terms in a subsequent writing.  Mr. Grabowski believed that settlement was reached at the

mediation, and he later reported to the Court that a settlement was in fact reached.

The terms the Parties agreed to were as follows:

(1) the mortgage would be reduced to a principle amount of approximately $75,000,[1] with interest fixed at 5.25%;

(2) CitiMortgage would establish an escrow for future tax and insurance with Bayer's monthly payment of principle, interest, tax, and insurance fixed for eighteen months;

(3) Bayer's payments would begin thirty (30) days after the execution of the written memorialization of these terms;

(4) CitiMortgage would issue Bayer a 1099 miscellaneous demonstrating that the principle reduction was related to her emotional distress claims, not debt forgiveness income, so that she was not saddled with a debt forgiveness tax burden;

(5) CitiMortgage agreed to credit repair to the best of its ability, reporting to the credit agencies that Bayer had been current at all times with prior payments that CitiMortgage had returned to her;

(6) Bayer agreed to waive her claims against CitiMortgage;[2]

(7) CitiMortgage agreed to pay $20,000 in attorney's fees to Schwab.

After the conclusion of the mediation, CitiMortgage attorney Bryce began

---

[1] The principle amount agreed to is not exactly $75,000 because the parties agreed the amount would be determined by CitiMortgage's amortization tables.  The amount nearest $75,000 in the appropriate amortization table would be the principle amount. .

[2] Attorney Schwab's mistaken language in correspondence after the date of settlement discussing a mutual waiver is attributable to mere scrivener's error, which attorney Schwab admitted in testimony before the Court after the respective positions of the Parties were clarified. CitiMortgage did not and would not agree to waive claims against Bayer while she maintains an ongoing mortgage obligation.

drafting a formal memorialization of the terms of the settlement.  On May 28, 2013, Bryce circulated a draft settlement agreement that did not contain all material terms that the Parties had agreed to at the mediation and included other terms not discussed previously.  Of particular concern to Bayer, the draft memorialization of the settlement included a three month "trial period" that required Bayer to make three months of payments before the loan was permanently modified.

After reviewing Bryce's draft, counsel for the Parties exchanged several e-mail communications in which Schwab expressed his belief that the draft did not express the terms of the settlement the Parties reached at mediation.  In response to Bayer's draft and the ensuing communications, Schwab filed the instant Motion to Enforce Judgment Reached at Mediation on behalf of Bayer on July 7, 2013.  The Court held a hearing on July 17, 2014, during which Schwab, Bayer, and Bryce testified.

## II.     CONCLUSIONS OF LAW

### A.     The Parties Agreed to Specific Material Terms of a Binding Settlement Agreement at Mediation

"An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).  The validity of settlement agreements is governed by state contract law.

4

Shell's Disposal and Recycling, Inc. v. City of Lancaster, 504 Fed. App'x 194, 200

(3d Cir. 2012); Mazzella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (1999).

"Under Pennsylvania law, 'the test for enforceability of an agreement is

whether both parties have manifested an intention to be bound by its terms and

whether the terms are sufficiently definite to be specifically enforced.'"[3] Id.

(quoting Channel Home Ctrs v. Grossman, 795 F.2d 291, 298–99 (3d Cir. 1986)).

"The intent of the parties is a question of fact which must be determined by the

factfinder. . . .  If the existence and binding effect of the settlement agreement is

contested by the parties, an evidentiary hearing exploring these matters is the

appropriate procedure."[4]  Standard Steel, LLC  v. Buckeye Energy, Inc., CIV.A.

04-538, 2005 WL 2403636, *9 (W.D. Pa. Sept. 29, 2005).

"An oral settlement agreement may be enforceable and legally binding

without a writing."  Kazanjian v. New England Petroleum Corp., 332 Pa. Super 1,

480 A.2d 1153, 1157 (1984).  "If parties agree upon essential terms and intend

them to be binding, 'a contract is formed even though they intend to adopt a formal

---

[3] "[T]he applicable law is that of the place with the most significant relationship to the parties and the transaction."  Tiernan v. Devoe, 923 F.2d 1024, 1033 (3d Cir. 1991). Accordingly, Pennsylvania law applies to this matter.

[4] The "[b]urden of proof is on the party attempting to enforce the settlement to establish that the parties reached an oral agreement."  Lanett Co., Inc. v. Celgene Co., CIV.A. 08-3920, 2011 WL 1193912, *2 (E.D. Pa. Mar. 29, 2011) (citing Mazella v. Koken, 559 Pa. 216, 739 A.2d 531, 537 (1999)).

document with additional terms at a later date.'" <u>Johnston v. Jonston</u>, 346 Pa. Super. 427, 499 A.2d 1074, 1076 (Pa. Super. Ct. 1985) (quoting <u>Courier Times, Inc. v. United Feature Syndicate, Inc.</u>, 300 Pa. Super. 40, 54, 445 A.2d 1288, 1295 (1982)).

Furthermore, there is a strong judicial policy favoring voluntary settlement of lawsuits. "Permitting parties to void settlement agreements on a whim, because the agreement becomes unpalatable or the parties become greedier, 'would work a significant deterrence contrary to the federal policy of encouraging settlement agreements.'" <u>Orta v. Con-Way Transp.</u>, CIV.A. 02-1673, 2002 WL 31262063, *2 (E.D. Pa. Oct. 2, 2002) (quoting <u>D.R. v. East Brunswick Bd. of Educ.</u>, 109 F.3d 896, 901 (3d Cir. 1997)).

For example, in <u>Standard Steel v. Buckeye Energy, Inc.</u>, CIV.A. 04-538, 2005 WL 2403636 (W.D. Pa. Sept. 29, 2005), the court found that the evidence of record demonstrated that the parties had reached a settlement agreement on five material terms, and granted the plaintiff's motion to enforce that agreement even when the parties later intended to reduce the agreement to writing. The court wrote:

> 10. Here, there may well be gaps in the oral agreement reached by the parties. Nonetheless, so long as there was agreement as to essential terms, the oral agreement is enforceable. . . . Here the negotiation

during mediation focused throughout every phase on the five key
issues outlined by [the mediator], the five key issues were agreed
upon by every party, and the mediation was deemed concluded after
each party specifically assented to terms necessary to resolve the five
key issues.  The record supports the court's determination that the
terms resolving the five key issues constitute the essential terms of the
agreement.

11. The court will enforce the agreement that was reached regarding
the terms resolving the five key issues found to be the essential terms
of the agreement.  The court, however, will not fill in gaps or interpret
ambiguities, nor go beyond that which the evidence demonstrated that
each party assented to, in enforcing the agreement.  See Olson v. N.
Am. Indus. Supply, 441 Pa. Super. 598, 658 A.2d 358, 362 (Pa. Super.
Ct. 1995).

Standard Steel, 2005 WL 2403636, at *10–11.

Similarly in the case *sub judice*, the Parties reached a settlement agreement

on seven (7) material terms that were the focus of the negotiations and underlying

litigation.  As stated, the terms agreed to were:

(1) Principle of approximately $75,000,[5] with interest fixed at 5.25%;

(2) CitiMortgage would establish an escrow for future tax and
insurance with Bayer's monthly payment of principle, interest, tax,
and insurance fixed for eighteen months;;

(3) Bayer's payments would begin thirty (30) days after the execution

---

[5] As stated, the principle amount agreed to was not precisely $75,000 because the Parties
agreed the amount would be determined by CitiMortgage's amortization tables.  The amount
nearest $75,000 in the appropriate amortization table would be the principle amount.  Despite
CitiMortgage's objections, the record and testimony are clear that this final principle amount was
agreed to.  Regardless of the manner in which the Parties explain the calculation, the result is
effectively the same: as near to $75,000 as the amortization tables allow.

of the written memorialization of these terms;

(4) CitiMortgage would issue Bayer a 1099 miscellaneous demonstrating that the principle reduction was related to her emotional distress claims, not debt forgiveness income, so that she was not saddled with a debt forgiveness tax burden;

(5) CitiMortgage agreed to credit repair to the best of its ability, reporting to the credit agencies that Bayer had been current at all times with prior payments that CitiMortgage had returned to her;

(6) Bayer agreed to waive her claims against CitiMortgage;

(7) CitiMortgage agreed to pay $20,000 in attorney's fees to Schwab.

The settlement reached at mediation was not contingent upon reducing those terms to writing.  It is well settled that when both parties expressly intend that a mutually acceptable writing is an condition of settlement, an oral agreement is not enforceable.  See, e.g., Krebs v. United Ref. Co. of Pennsylvania, 893 A.2d 776, 785 (Pa. Super. Ct. 2006).  Nevertheless, "[w]hen parties, through their respective counsel, assent to the terms of the oral agreement, and writing is not a condition of the agreement, the oral settlement agreement is binding."  Orta, 2002 WL 31262063, at *1.

In the case at bar, the evidence indicates that the Parties reached agreement on the aforesaid material terms at the mediation and did not include a writing as a material condition of a binding settlement agreement.  While the Parties agreed to memorialize the terms of the settlement agreement in a mutually acceptable writing, to work out particular non-material details in that writing, and then execute the document, the writing was not a material condition of the binding settlement reached at mediation.  See id.

      B.    The Statute of Frauds Does Not Bar Enforcement of the Settlement Agreement

The statute of frauds is a traditional principle of contract law that maintains that modifications to interests in land must be in writing.  See 33 P.S. § 1; Kurland v. Stolker, 516 Pa. 587, 533 A.2d 1370, 1372 (1987).  "[T]his particular section of the Statute of Frauds relating to interests in land constitutes a statement of public policy. . . .  It does not render oral agreements void."  Springton Pointe Assocs. v. Ledbetter, 50 Pa. D. & C.3d 503, 507 (Pa. Comm. Pl. 1989).  "[T]he Statute of Frauds is meant 'to be used as a shield, not as a sword.'"  Id. (quoting Fanin v. Cratty, 331 Pa. Super. 326, 332, 480 A.2d 1056, 1059 (1984).  Said another way, the purpose of the statute of frauds "is not to prevent the performance or the enforcement of oral contracts that have in fact been made; it is not to create a

loophole of escape for dishonest repudiators." 4-22 CORBIN ON CONTRACTS § 22.1; see also Standard Steel, 2005 WL 2403636, at *12 ("[T]he purpose of the Statute of Frauds is to prevent parties from escaping legal obligations.").[6]

In Pennsylvania, mortgages and modification of mortgages are generally subject to the statute of frauds.[7] Phoenix Four Grantor Trust #1 v. 642 North Broad St. Assocs., CIV. A. 00-597, 2000 WL 876728, *5 (E.D. Pa. June 29, 2000); Linsker v. Savings of America, 710 F. Supp. 598, 600 (E.D. Pa. 1989); In re

---

[6]Associate Justice Michael A. Musmanno of the Supreme Court of Pennsylvania eloquently expounded on the policy of the statute of frauds, writing:

> Ever since that venerable statute was armed with authority to prevent the assertion of verbal understandings regarding title to land, it has been called upon to strike down agreements which were not committed to writing.  The laudable purpose of this guardian of truth is to prevent frauds and perjuries.  Occasionally, however, an embattled property owner or prospective purchaser of land, summons the statue to enforce a condition which does not seem to coincide with principles of honesty and fair dealing.  In such cases the Courts should study the situation involved to make certain that the statute is not being used to perpetrate fraud and perjuries rather than prevent them.

Simplex Precast Indus., Inc. v. Biehl, 395 Pa. 105, 149, 149 A.2d 121, 108–09 (1959).

[7] It is noteworthy, however, that mortgages in other lien theory jurisdictions are not necessarily subject to the statue of frauds:

> It has been held, however, that the result is different in a state that follows a lien theory rather than a title theory; since a mortgage does not transfer title, possession, or any other interest except a naked lien, and rights accrue to the mortgagee only when there has been a default, court foreclosure, and sale to the mortgagee and a transfer of title to it according to law, an oral agreement to make a mortgage is not within the statute of frauds.

9 WILLISTON ON CONTRACTS § 25:7 (4th ed. 2014) (citing Martyn v. First Federal Sav. & Loan Ass'n of West Palm Beach, 257 So.2d 576 (Fla. Dist. Ct. App. 4th Dist. 1971)).

Whatever, LLC, 478 B.R. 7000, 710 (Bankr. W.D. Pa. 2012). An agreement

generally subject to the statute of frauds may be taken out of its purview if: (1)

"there is evidence to establish that the agreement was made," Stelwagon Mfg. Co.

v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1276 (3d Cir. 1995); (2) the

modification is admitted by the party against whom enforcement is sought, Zloviter

v. Zloviter, 355 Pa. 299, 49 A.2d 779 (1946); or, (3) there has been performance or

part performance. M. Leff Radio Parts, Inc. v. Mattel, Inc., 706 F. Supp. 387, 394

(W.D. Pa. 1988). Evidence demonstrating that an agreement was made must be

clear and competent, and "it may be proven by the acts and declarations of the

parties, either together or separately." Kurland, 533 A.2d at1373. These

exceptions promote "the underlying purposes of the statute of frauds: to prevent

perjury and fraud . . . and to prevent parties from escaping their legal obligations."

Stelwagon Mfg. Co., 63 F.3d at 1276 (citing Mattel, 706 F. Supp. at 394; Simplex,

149 A.2d at 123).

In the case before the Court, the only portions of the Parties' oral agreement

that generally are subject to the statute of frauds are the modified principle amount

of the mortgage, the escrow payment period, and the date on which Bayer's

payments commence. Those terms constitute the modification of a mortgage,

which place the agreement within reach of the statute of frauds under Pennsylvania

11

law.  See Linsker, 710 F. Supp. at 600.  Nevertheless, "the acts and declarations of the parties" as well as the evidence of record demonstrate clearly that those three terms were unequivocally agreed upon by the Parties.  As such, enforcement of those terms is not barred by the statute of frauds, the purpose of which is "to prevent parties from escaping legal obligations."  Standard Steel, 2005 WL 2403636, at *12.

## III.   CONCLUSION

Considering the evidence of record, the law, the institutional expertise and deference that trial courts exercise in these matters,[8] and the strong judicial policy in favor of enforcing settlement agreements,[9] the Plaintiff's Motion to Enforce Judgment is granted.

---

[8] "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." FED. R. CIV. P. 52(a)(6).

[9] Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d Cir. 1982); Orta, 2002 WL 31262063, at *2.

An appropriate Order follows.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge